**Dated: April 01, 2026.**

_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 25-30800-CGB** |
| | § | |
| **GUILLERMO GARCIA and ROCIO** | § | |
| **SOCORRO GARCIA,** | § | |
| | § | **Chapter 7** |
| **Debtors.** | § | |
| **NEXTGEAR CAPITAL, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Adv. No. 25-03017-CGB** |
| **GUILLERMO GARCIA and ROCIO** | § | |
| **SOCORRO GARCIA,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OPINION DENYING DEFENDANTS'
## <u>MOTION TO DISMISS [ECF No. 6]</u>

In this opinion, the Court considers whether a borrower-lender relationship predicated on a floor plan loan agreement that obligates the borrower to hold amounts received "in trust" is a fiduciary relationship for the purposes of 11 U.S.C.

1

§ 523(a)(4), and whether the borrower's failure to remit said proceeds rises to willful and malicious injury under 11 U.S.C. § 523(a)(6). The answer is what every first-year law student learns: "it depends." The Court denies the defendants' motion to dismiss on both claims because at this procedural posture, there is not yet evidence on the context and circumstances of the agreement and the course of performance of the parties from which the Court would be able to determine these claims.

## Factual and Legal Background

This case arises out of the lending relationship between NextGear Capital, Inc. ("NextGear") and CG Continental Garcia Motors LLC ("CG Continental"), a business owned by Defendants Guillermo Garcia and Rocio Socorro Garcia (the "Garcias").[1] CG Continental was a car dealership. NextGear was a floor plan lender for the dealership. In February 2023, NextGear and CG Continental entered into an agreement granting CG Continental a credit line of $400,000, which was eventually increased to $735,000.[2] The Garcias each signed personal guarantees on the agreement.[3] Under the terms of the agreement, NextGear took a security interest in all CG Continental's assets and properties:

> all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all accounts [illegible] Borrower's Reserve held by or on behalf of Lender, if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, reserves; . . . and all additions, accessions, accessories, replacements, substitutions, and proceeds of any of the foregoing.[4]

Under the agreement, NextGear financed vehicles that were part of CG Continental's inventory from February 20, 2023, until June 4, 2025.[5] However, according to NextGear, CG Continental did not hold up its end of the bargain. NextGear alleges that CG Continental and the Garcias sold twenty-four financed

---

[1] Pl.'s Compl. at 2.
[2] Pl.'s Compl. at 2–3, Pl.'s Ex. A.
[3] Pl.'s Ex.C; Pl.'s Ex. D.
[4] Pl.'s Ex. A at 2. A UCC financing statement was on file purporting to perfect this interest. Pl.'s Ex. B. For purposes of deciding this motion, the Court assumes the interest was in fact perfected.
[5] Pl.'s Compl. at 4.

2

vehicles and did not turn over the proceeds to NextGear.[6] Plaintiff "declared the Note to be in default on or about June 27, 2025."[7]

On June 26, 2025, the Garcias filed their *Voluntary Petition under Chapter 7*.[8] Their schedule D lists "NextGear Capital" as a creditor with a claim in the amount of $579,304.00.[9] The description states "Vehicle Floor Plan (personal guarantee for corp, CG Continental Garcia Motors – corp also filed ch 7) -Surrender interest, if any."[10] The Garcias received a discharge in their individual bankruptcy case on October 2, 2025. Before that, NextGear had filed this adversary objecting to the discharge of their debts to it.[11]

On September 24, 2025, NextGear filed its *Complaint* [ECF No. 1], commencing the instant adversary proceeding. NextGear seeks a nondischargeability determination under 11 U.S.C. §§ 523(a)(4) and (a)(6) and a judgment in the amount of $232,007.66.[12] The Garcias, proceeding pro se, filed a *Motion to Dismiss Complaint* [ECF No. 6]. NextGear filed a response [ECF No. 10]. No reply was filed.

### Jurisdiction and Authority

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(b)(2) and 1334(b). All parties filed statements consenting to the Court's authority to enter a final judgment in this adversary proceeding.[13]

### Legal Standards

Federal Rule of Civil Procedure 12(b)(6) is made applicable to this case through Federal Rule of Bankruptcy Procedure 7012. In considering a 12(b)(6) motion, the court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff."[14] However, the plaintiff must plead "enough facts to state

---

[6] *Id.* A list of these vehicles is attached to Plaintiff's Complaint as Exhibit E.

[7] *Id.*

[8] *In re Guillermo Garcia and Rocio Socorro Garcia*, 25-30800-cgb, ECF No. 1.

[9] *In re Guillermo Garcia and Rocio Socorro Garcia*, 25-30800-cgb, ECF No. 1 at 32.

[10] *Id.* CG Continental filed a petition for chapter 7 relief on June 26, 2025. *In re CG Continental Garcia Motors*, No. 25-30799-cgb.

[11] *See* Pl.'s Compl.

[12] Pl.'s Compl. at 4, 6

[13] ECF Nos. 9, 11.

[14] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

a claim to relief that is plausible on its face."[15] "Our task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'"[16] The court may consider exhibits attached to the complaint and matters of public record when ruling on a 12(b)(6) motion.[17]

To have a debt deemed nondischargeable, a creditor must establish one of the categories listed in § 523(a) by a preponderance of the evidence.[18] However, the Fifth Circuit has instructed that these statutory exceptions are "construed strictly against the creditor and liberally in favor of the debtor."[19]

## Analysis

**A. While the floorplan agreement does not by itself establish a fiduciary relationship for purposes of § 523(a)(4), factual questions remain as to the whether the relationship between the parties was in fact fiduciary in nature.**

NextGear first alleges that the Garcias' debt is nondischargeable under 11 U.S.C. § 523(a)(4).[20] Under § 523(a)(4), an individual debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[21] NextGear only references a "fiduciary duty" in its complaint and does not allege embezzlement or larceny outside of the fiduciary context.[22] Therefore, this Court will only evaluate the fiduciary duty claim and need not analyze

---

[15] *Id.* at 503 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

[17] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) (citing Fed. R. Civ. P. 10(c)); *Berry Cont. LP v. Schmidt (In re Schmidt)*, 618 B.R. 813, 815–16 (Bankr. W.D. Tex. 2020) (quoting *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

[18] *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017) (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991)).

[19] *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).

[20] Pl.'s Compl. at 5.

[21] 11 U.S.C. § 523(a)(4).

[22] Pl.'s Compl. at 4–5. *See* 4 Collier on Bankruptcy ¶ 523.10 (16th 2025) ("The phrase 'while acting in a fiduciary capacity' clearly qualifies the words 'fraud or defalcation' and not 'embezzlement' or 'larceny.' The import of the grammatical structure is that the discharge exception applies even when the embezzlement or larceny was committed by someone not acting as a fiduciary." (footnote omitted)).

embezzlement or larceny.[23] A plaintiff seeking a nondischargeability determination under this section bears the burden of establishing a fiduciary relationship, which for the purposes of § 523(a)(4) is decided by the "even narrower" federal common law definition, rather than by state law.[24]

NextGear asserts that the Garcias' fiduciary duty arose out of their obligation to remit proceeds to NextGear under the Note securing the line of credit provided to CG Continental.[25] Specifically, NextGear alleges that this fiduciary duty arises out of what it refers to as "the Trust Provisions" of the Note, Paragraphs 4(f) and 5(o).[26] Paragraph 4(f) provides that the "Borrower" is obligated "[t]o hold all amounts received from the sale of any Unit of Lender Financed Inventory . . . in trust for the sole benefit of Lender" and to remit the funds within twenty-four hours of receipt.[27] Paragraph 5(o) contains a similar provision.[28] Wielding identical provisions in other floorplan agreements, NextGear Capital has advanced the fiduciary duty argument in bankruptcy courts before with varying results.[29]

---

[23] *See NextGear Cap., Inc. v. Nozary (In re Nozary)*, 15-0092-NVA, 2017 Bankr. LEXIS 3298, at *26–27 (Bankr. D. Md. Sep. 29, 2017). In any case, neither embezzlement nor larceny appears to fit the facts as alleged.

[24] *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). In this circuit, a fiduciary relationship is "limited to instances involving express or technical trusts," as the Court discusses below. *See Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) (citing *Chapman v. Forsyth*, 43 U.S. (How.) 202, 207 (1844)). For a discussion of the applicability of state law to this issue, see the discussion below.

[25] Pl.'s Compl. at 5.

[26] *Id.*

[27] ECF No. 1-2 at 3.

[28] *See id.* at 6 ("Upon the sale of any Unit of Lender Financed Inventory, Borrower shall hold the proceeds from such sale in trust for the benefit of Lender . . . .").

[29] *See, e.g., NextGear Cap., Inc. v. Lorca (In re Lorca)*, 20-04457, 2025 Bankr. LEXIS 2700, at *34–35 (Bankr. N.D. Tex. Oct. 20, 2025) (trust provisions establish an express trust); *NextGear Cap., Inc. v. Rifai (In re Rifai)*, 604 B.R. 277, 324–25 (Bankr. S.D. Tex. 2019) (the floorplan agreement did not create a trust); *NextGear Cap., Inc. v. Mejorado (In re Mejorado)*, 605 B.R. 116, 124 (Bankr. N.D. Tex. 2019) (no fiduciary duty was created); *see Nozary*, 2017 Bankr. LEXIS 3298 at *25–26 (no fiduciary duty created by personal guarantee of obligations under floorplan agreement). *Lorca* specifically identifies the "trust provisions" as "§§ 4(f) and 5(o)," which are the same section numbers as the agreement before the Court in this case. 2025 Bankr. LEXIS 2700 at *33. *Rifai* quotes the provisions, which are identical to those in this case. 604 B.R. at 290–91. *Mejorado* likewise quotes from an identical 4(f) provision. 605 B.R. at 121, n.16. And while the facts of *Nozary* are somewhat atypical, it, too, quotes from an identical paragraph 4(f). 2017 Bankr. LEXIS 3298 at *22.

The § 523(a)(4) fiduciary relationship test is a high bar to meet, and is rarely, if ever, created by a contract on its own without consideration of context and conduct. In the Fifth Circuit, an "express or technical" trust is required to establish a fiduciary relationship sufficient to hold a debt nondischargeable under § 523(a)(4).[30] "To establish an express or technical trust, an agreement must (1) create a definable *res* and (2) impose 'trust-like' duties."[31] However, a contract's use of the words "in trust" does not thereby create a fiduciary relationship for purposes of § 523(a)(4).[32] An agreement to hold proceeds "in trust" can be construed as merely a covenant and not a trust agreement.[33] The case law suggests that an agreement that merely imposes a duty to preserve collateral and remit proceeds, which are typical duties in a security agreement, is not a trust.[34]

Still, when viewed in the context of the parties' commercial dealings, "trust" language in the contract can be instructive as to whether a trust relationship was in fact established. Courts have to look carefully at the particularities of the agreement and, in many cases, the implementation of this agreement, to determine whether a

---

[30] *Miller*, 156 F.3d at 602 (quoting *Tran*, 151 F.3d at 342).

[31] *Ford Motor Credit Co. LCC v. Franceschini (In re Franceschini)*, No. 10-03175, 2010 WL 3952870, at *4 (citing *Tran*, 151 F.3d at 342–43).

[32] *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 334 (1934) ("The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust."). *See also, e.g.*, *Bombardier Credit, Inc. v. Theis (In re Theis)*, 109 B.R. 474, 475 (Bankr. M.D. Fla. 1989) ("[T]he simple fact that agreements include trust provisions will not necessarily make the agreement a trust agreement, nor will it create a fiduciary relationship."); *Judd v. First Fed. Sav. & Loan Ass'n*, 710 F.2d 1237, 1241 (7th Cir. 1983) ("[D]espite the scattered use of the words 'trust' and 'trustee,' and the phrase 'in trust,' the mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship."); *Evans Fur Co. of Houston, Inc. v. The Chase Manhattan Bank, N.A. (In re Sakowitz, Inc.)*, 949 F.2d 178, 181 (5th Cir. 1991) ("It is well established that '[i]f a ritualistic incantation of trust language were deemed conclusive, it would be a simple matter for one creditor, at the expense of others, to circumvent the rules pertaining to the creation of bona fide security interests." (quoting *In re Morales Travel Agency*, 667 F.2d 1069, 1072 (1st Cir. 1981)).

[33] *See First Nat'l Bank of Wichita Falls v. Parr (In re Parr)*, 347 B.R. 561, 565 (Bankr. N.D. Tex. 2006); *see also Dealer Servs. Corp. v. Goldstein (In re Goldstein)*, No. 09-A-96122, 2011 WL 5240335, at *1 (Bankr. N.D. Ill. Oct. 31, 2011) ("[N]either can creditors create a fiduciary duty for purposes of Section 523(a)(4) simply by throwing the word 'trust' into a loan or security document.").

[34] *See Franceschini*, 2010 WL 3952870 at *4 (discussing a similar floor plan loan agreement, holding "[t]he duties to remit proceeds and preserve collateral are typical of security agreements, and they do not transform a debtor-creditor relationship into a fiduciary relationship" (citing *Tran*, 151 F.3d at 345)).

6

fiduciary duty is sufficiently established. [35] Requiring segregation of collateral/proceeds and imposing particular requirements for remission of identifiable proceeds are some (but not the only) relevant factors speaking to whether the parties intended to create a trust. [36] Indeed, while these requirements do not inherently by themselves create a fiduciary relationship, they may constitute "trust-like duties."[37]

In *Davis*, the leading 1934 Supreme Court case on this issue, an automobile dealer debtor agreed to hold a vehicle "as the property of [the bank] for the purpose of storage, and not to sell, pledge or otherwise dispose of it except upon consent in writing." [38] Despite this agreement, the dealership sold the vehicle "without concealment and in the ordinary course of business," but without prior permission from the bank.[39] The debtor informed the bank after the transaction and promised to pay it; the testimony at trial supported that this was the parties' course of dealing.[40] The Court reasoned that a trust implied from the contract was not sufficient to create a fiduciary relationship; nor was a trust in fact created simply because "the parties to one of the documents have chosen to speak of it as a trust."[41] Rather, when viewing the transaction as a whole, while "[t]he trust receipt may state that the debtor holds the car as the property of the creditor; in truth it is his own property, subject to a lien."[42] In light, therefore, of both the transactional documents and the parties' history of dealings, there was not a fiduciary duty for nondischargeability purposes.

*Tran*, a Fifth Circuit case on § 523(a)(4), weighed whether a fiduciary relationship was created by a state statute regulating the handling of proceeds of sale

---

[35] *See generally Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497–500 (4th Cir. 2008).

[36] *See Sakowitz*, 949 F.2d at 182 ("There are any number of provisions that, although they would be redundant in a contract that on its face is a trust agreement, would facilitate an effort to find a trust in a contract that is not facially a trust agreement. Among any number of trust-like provisions that could be but are not present in the instant sublease–and that would tend to support the finding of an express trust–would be a provision prohibiting commingling of trust funds.").

[37] *Franceschini*, 2010 WL 3952870 at *4 (first citing *Tran*, 151 F.3d at 343–45, and then citing *Strack*, 524 F.3d 493).

[38] *Davis*, 293 U.S. at 330.

[39] *Id.*

[40] *Id.* ("According to the petitioner's testimony, notice of the transaction was given the same day to one of the respondent's officers. There is also testimony tending to support the inference that on many other occasions cars held upon like terms had been sold without express consent and the proceeds accounted for thereafter.").

[41] *Id.* at 333–34 (citing *Chapman*, 43 U.S. (How.).at 208)

[42] *Id.* at 334.

7

of lottery tickets.[43] Similar to the floorplan agreement here, the statute in *Tran* contained a requirement that "[m]oney received by a sales agent from the sales of tickets . . . shall be held in trust for the benefit of the state."[44] Despite this language, the Court reasoned that this statute did not create a fiduciary relationship because it did not expressly prohibit the ticket sales agent from spending proceeds for non-trust purposes and because it did not mandate that the funds be segregated.[45] Further, the statute did not vest the ticket sales agent "with independent discretion to manage the state's money."[46] Notably, this case should not be read to suggest that the language stating the money would be "held in trust for the benefit of the state" was irrelevant to the ultimate determination. To the contrary, the Fifth Circuit simply placed that language in fuller context. The "in trust" language alone did not create a fiduciary relationship, and within the context of the statutory scheme as a whole, the relationship fell short of the necessary standard.

The principles of these cases guide this Court's analysis. Surely language dictating that property will be held in trust is *relevant* to whether the fiduciary standard is met, but it is insufficient on its own. A court must consider both the surrounding provisions of any transaction documents as well as the parties' actual dealings.[47] Here, unlike *Davis*, there is not yet testimony about the parties' course of dealing or course of performance. Additionally, here, unlike *Tran*, the document executed by both parties indicates a more "trust-like" requirement "[t]o hold all amounts received from the sale of any Unit of Lender Financed Inventory in the form as received in trust for the sole benefit of and for Lender" and requires remittance within twenty-four hours apparently without any discretion over its use.[48]

The fiduciary analysis under § 523(a)(4) is a federal law analysis.[49] In making this determination, however, the state law analysis is relevant to determine "whether

---

[43] *Tran*, 151 F.3d at 342–43.

[44] *Id.* at 343 (quoting the statute).

[45] *Id.* at 344.

[46] *Id.* at 345.

[47] *See also, e.g.*, *In re Butts*, 120 F. 966, 970–71 (N.D.N.Y. 1903) (viewing the transaction as a whole, holding "It was not competent for the parties, in this obscure uncertain manner, to change the legal effect of the transaction.").

[48] ECF No. 1-2 at 3. The Court assumes for the purposes of this motion that, as alleged, NextGear has a valid and perfected lien in the proceeds of the vehicles.

[49] *Miller*, 156 F.3d at 602.

8

a specific case involves an express trust."[50] While the case law emphasizes the importance of state law, the exact role played by the state law analysis in evaluating fiduciary status for purposes of § 523(a)(4) is unclear to this Court.[51] Perhaps establishment of a state law trust should be thought of as a necessary but not sufficient condition for § 523(a)(4) liability. In any case, while the federal § 523(a)(4) standard is rigorous and much more difficult to meet,[52] the existence of an express trust under state law at a minimum weighs *in favor* of the existence of a fiduciary relationship under the federal law.[53]

To establish whether an express trust is created, then, the Court turns to the definition of an express trust under Texas law. Texas Property Code § 111.004(4) provides a rather intricate definition of "express trust," which the Court will quote in relevant part:

> [A] fiduciary relationship with respect to property which arises as a manifestation by the settlor of an intention to create the relationship and which subjects the person holding title to the property to equitable duties to deal with the property … for the benefit of another person[.][54]

Therefore, in Texas, "[a] party seeking to establish an express trust must show the existence of the intended trust property, object, and beneficiary with reasonable certainty."[55]

---

[50] *Angelle v. Reed (Matter of Angelle)*, 610 F.2d 1335, 1341 (5th Cir. 1980); *see also LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993) ("In determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look to both state and federal law. The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." (citing *Angelle*, 610 F.2d at 1339)); *Gupta v. Eastern Idaho Tumor Inst., Inc. (In re Gupta)*, 394 F.3d 347, 349–50 (5th Cir. 2004).

[51] *See, e.g.*, *Gupta*, 394 F.3d at 350 ("As we have elaborated, 'The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists.'" (quoting *Bennett*, 989 F.2d at 784)).

[52] *Miller*, 156 F.3d at 602.

[53] *See, e.g.*, *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 777–78 (S.D. Tex. Bankr. 2008) (applying Texas law in determining whether an express trust was created, but ultimately denying that a fiduciary relationship exists under the higher § 523(a)(4) standard).

[54] Tex. Prop. Code § 111.004 (2023).

[55] *In re Estate of Berger*, 174 S.W.3d 845, 848 (Tex. App.—Waco, no pet.) (footnote omitted) (collecting cases).

9

Like the § 523(a)(4) cases cited above, under Texas law, a fiduciary relationship generally does not exist between a borrower and a lender.[56] However, it is not true that a fiduciary relationship can *never* arise from this context. Indeed, Texas courts have found such a relationship based on "extraneous facts and conduct, such as excessive lender control or influence in the borrower's business activities."[57] Like in the federal analysis, the contractual language alone is generally not enough under Texas law to establish a fiduciary relationship between the parties. The court has to assess the parties' actual commercial relationship, in both word and deed. [58] Therefore, to whatever extent the existence of an express trust under state law bears on the § 523(a)(4) analysis, this Court still does not have enough information at this juncture because it is currently unable to determine whether Texas law would deem a fiduciary relationship to exist between the parties.

Overall, viewing the facts in the light most favorable to NextGear, the non-moving party, it is plausible that the contractual language together with the parties' dealings *may* establish that there was a fiduciary relationship between the parties.[59] At this point in the proceedings,[60] there is not enough factual information for the

---

[56] *Wakefield v. Bank of Am., N.A.*, No. 14-6-00580-CV, 2018 WL 456721, at *5 (Tex. App.—Houston [14th Dist.] Jan. 18, 2018, no pet.) (first citing *Baskin v. Mortg. and Tr., Inc.*, 837 S.W.2d 743, 747 (Tex. App.—Houston [14th Dist.] 1992, writ denied), and then citing *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ)).

[57] *Bank One, N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *Farah*, 927 S.W.2d at 675).

[58] *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997) ("In order to give full force to contracts, we do not create [a fiduciary] relationship lightly. Accordingly, while a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit." (citations omitted) (first citing *Thigpen v. Locke*, 36 S.W.2d 247, 253 (Tex. 1962), and then citing *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995))).

[59] Of course, it has long been held that a fiduciary relationship for purposes of § 523(a)(4) cannot be implied from a contract and that it must have existed "before the wrong and without reference thereto." *Davis*, 293 U.S. at 333; *accord Tran*, 151 F.3d at 342. To be clear, the Court is not finding today that NextGear's floorplan agreement by itself creates a fiduciary relationship. It does not. However, this does not mean that there was not a fiduciary relationship between the parties, as pled in the complaint, pre-existing the alleged wrongdoing.

[60] It is worth noting that there is a lack of floorplan agreement § 523(a)(4) cases at the motion to dismiss stage. A vast majority of the cases deciding whether a fiduciary relationship is created by a floorplanning agreement were decided after a trial, where the courts were able to consider, for example, testimony about the course of dealing between the parties. *See, e.g.*, *Lorca*, 2025 Bankr. LEXIS 2700 (trial held); *Rifai*, 604 B.R. 277 (trial held); *Mejorado*, 605 B.R. 116 (trial held); *Nozary*, 2017 Bankr. LEXIS 3298 (trial held).

10

Court to determine whether a fiduciary relationship existed between the parties.[61] Because the definition of express trust under Texas law includes a fiduciary relationship between the parties, and there is not yet evidence to establish a fiduciary duty, the Court is unable to conclude whether such a duty has been created at this juncture. For example, it is uncertain whether the proceeds were in fact expected to be, or in fact were, kept in a separate fund or remitted promptly as required.[62] There has not yet been testimony or evidence about the course of performance between the parties, and whether it was customary for CG Continental to use proceeds from the sale of vehicles for other purposes and simply repay NextGear with other funds. For these reasons, the Garcias' motion to dismiss is denied as to the 523(a)(4) claim.

**B. The alleged misappropriation of vehicles and proceeds sufficiently supports a claim for willful and malicious injury under section 523(a)(6).**

NextGear also alleges that the Garcias' debt is nondischargeable under 11 U.S.C. § 523(a)(6). Under § 523(a)(6), a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable.[63] The Supreme Court clarified in *Kawaauhau v. Geiger* that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[64] The Fifth Circuit further clarified this test, holding that it is "condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor."[65] "Because debtors generally deny that they had a subjective motive to cause harm, most cases that hold debts to be non-dischargeable do so by determining whether '[the debtor's] actions were at least substantially certain to result in injury.'"[66]

According to NextGear, the Garcias "willfully and intentionally determined" how the vehicles and proceeds from the vehicles would be used and misappropriated the vehicles and/or the proceeds despite knowledge that this misappropriation "was

---

[61] *See Southern Scrap Material Co. v. ABC Ins. Co. (In re Southern Scrap Material Co. LLC)*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

[62] *See Franceschini*, 2010 WL 3952870, at *6 ("The existence of a separate fund is a key factor in determining whether an express trust exists." (citing *Gen. Elec. Credit Corp. v. Graham (In re Graham)*, 7 B.R. 5, 7 (Bankr. D. Nev. 1980)).

[63] 11 U.S.C. § 523(a)(6).

[64] *Kawauuhau v. Geiger*, 523 U.S. 57, 64 (1998).

[65] *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. 2003) (quoting *Miller*, 156 F.3d at 606) (citing *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998)).

[66] *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x 360, 361–62 (5th Cir. 2007) (quoting *Miller*, 156 F.3d at 606).

11

substantially certain to harm" NextGear.[67] Accepting NextGear's version of the facts as true, NextGear pleads that the Garcias breached (or caused CG Continental to breach) the contract.

It is possible for a breach of contract to rise to "an intentional or substantially certain injury" that would prevent discharge under section 523(a)(6).[68] "[T]he dischargeability of contractual debts under Section 523(a)(6) depends upon the knowledge and intent of the debtor at the time of the breach."[69] Further, "explicit evidence that a debtor's breach was intended or substantially certain to cause the injury to the creditor" is required.[70] Conversion of property when the debtor is aware of a lienholder's claim can constitute a willful and malicious injury.[71]

NextGear's complaint sufficiently pleads that the Garcias allowed the vehicles to be sold and the proceeds to be appropriated knowing that they could not repay NextGear and that this was "substantially certain to harm" NextGear.[72] This allegation is plausible as pled. Therefore, dismissal of NextGear's § 523(a)(6) claim under rule 12(b)(6) would be inappropriate. The Garcias' motion to dismiss is denied as to the section 523(a)(6) claim.

## Conclusion

NextGear sufficiently pled plausible violations of both 11 U.S.C. §§ 523(a)(4) and (6). Therefore, the Garcias' motion to dismiss is denied. Of course, this ruling

---

[67] Pl.'s Compl. at 6.

[68] *See Williams*, 337 F.3d at 510 (collecting cases).

[69] *Id.*

[70] *Id.* at 511.

[71] *See Rifai*, 604 B.R. at 327–28 (quoting *Collier on Bankruptcy* ¶ 523.12[4] (16th ed. 2018)) (citing *Monson v. Galaz (In re Monson)*, 661 F. App'x 675, 684 (11th Cir. 2016)). The case law on this issue analyzes a debtor's use of proceeds in determining whether conduct is willful and malicious. *See, e.g.*, *Mabank Bank v. Grisham (In re Grisham)*, 245 B.R. 65, 74–75 (Bankr. N.D. Tex. 2000) (finding that the use of proceeds to keep a business afloat was not a willful and malicious injury, while unaccounted-for use was willful and malicious). At the 12(b)(6) stage, it is reasonable for a plaintiff not to have facts about how the proceeds were used. The Court's role at this stage is only to determine whether the pleading is plausible, or, otherwise stated, whether it "'calls for enough fact to raise a reasonable expectation that discovery will raise evidence of' the necessary claims or elements." *Southern Scrap Material Co.*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556).

[72] Pl.'s Compl. at 6.

12

is not a prediction that NextGear can be successful on both of its claims.[73] Rather, at this point in the proceedings, the Court is lacking information that will come out later in the litigation through discovery and witness testimony.

**ACCORDINGLY, IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss is DENIED.

# # #

---

[73] *See Covington Cnty. Sch. Dist.*, 675 F.3d at 854 (quoting *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387).

13